### JOHN R. HAMILTON ET AL. V. HENRY C. PLEASANTS.

The court has absolute control of all interlocutory judgments or orders in every case until the final judgment.

In all sales made by an executor or an administrator he acts under the decretal order of the probate court, and the purchaser at his own peril is required to ascertain the grounds and authority of the fiduciary, not from his declarations at the time of the sale, but from the orders of the court and the statutes of the state in regard to his special duties in the premises.

The administrator could make no terms with purchasers at such sales which the orders of the court or the laws of the land did not warrant. Of the nature of such orders and the provisions of the law the purchaser had the same means of knowing and understanding as the administrator. If the law therefore did not warrant a sale for Confederate money, the declaration of the administrator at the time of the sale, that the sale was made for Confederate money, could not operate as a fraud upon the purchaser.

ERROR from De Witt. The case was tried before Hon. J. J. HOLT, one of the district judges.

This was a suit in the district court of De Witt county, filed March 11, 1866, by Pleasants, administrator on a note for negroes belonging to his intestate, sold under the order of the probate court, in November, 1862; personal security and a lien on the property sold were ordered by the court. The note was given December 18, 1862. John Hamilton, John R. Hamilton, and Summers signed the note, but whether the two latter were principals or securities does not appear. John R. Hamilton and Summers set up below that the sale was not made according to the order of the statute, (Paschal's Dig., Art. 1333;) that no mortgage was taken by the administrator on the slaves and no personal

security, as required; that the sale was made by the administrator to be paid in Confederate money, and the bid made under such assurance, on which they relied at the time of the bid and execution of the note; defendants agreed that a judgment might go against them for the value of Confederate money at the maturity of the note, November 4, 1863.

They set up fraud in the administrator at the sale and at the execution of the note; in this, that he stated at the sale that the bids would be in Confederate money and the notes ,payable therewith, and that defendants relied on his representations in making the bid and making the note, and the subsequent refusal of the administrator to receive the same or its equivalent in value at its maturity.

*Albert N. Mills*, for plaintiff in error.—The matter set up in amended answers of April 3 and October 2, 1866, was a sufficient ground for relief. They alleged that the administrator sold the slaves to be paid for in Confederate money, and so announced it at the term of bidding; that defendants relied on such assurances in making the bid and at the execution of the note, which mode of payment the administrator afterwards declined. Defendants were willing for a judgment for the value of the Confederate money at the note's maturity. The defense is within the cases of Crayton v. Munger, 9 Tex., 285; Mitchell v. Zimmerman, 4 Tex., 79; Able v. Chandler, 12 Tex., 88; Combs v. Lane, 17 Tex., 280.

At the spring term, 1866, defendants set up, among other things, that the administrator put up and sold the slaves to be paid for in Confederate money, and that the note was executed under such assurance of the administrator, and on the same day an exception was filed to the amendment, and sustained as to all the answer except "that part which set up that the negroes were put up and sold by the administrator and bid for payable in Confederate money, together

with all that part of the answer setting up the facts in connection therewith." This was done by a former judge, S. A. WHITE. At the fall term of 1866, plaintiff called up his exceptions filed April 3, 1866, to defendant's amendment of that term, when defendant called the attention of the court to the fact that the same exceptions to same amendment had been passed on at spring term, and a material part thereof overruled, to wit, as to the administrator selling the slaves for Confederate money; but the new judge passed on the exception again at the fall term, and struck out the entire amendment of April, 1866.

*Glass & Callendar*, for defendant in error.

LINDSAY, J.—The error complained of in this case is, that at the trial of the cause the district judge adjudicated upon exceptions to the original and amended answers of the defendant, which had been filed and acted upon at a previous term of the court by another and a different judge. This objection is unavailing. Whether this was done by the same or a different judge can make no difference. In contemplation of law it is the same judicial authority, although the incumbents of the bench, at the respective sessions of the court, were different individuals. The court has absolute control of all interlocutory judgments or orders in every case until the final judgment. Over the final judgment it has no further control, except in the special modes pointed out by law: such as the arrest of the judgment, the granting of a new trial, and the like. The court had a right to· correct any error, if such was committed, at any time previous to the final trial. Without such power it would be a misnomer to call it a court of justice.

The defenses set up in the answers, original and amended, were insufficient in law to defeat the action. The exceptions were demurrers to the answers, and only had the

effect to test the question, whether the facts pleaded, admitting their truth, was a valid defense to the action. We are satisfied they were no good defenses, and the exceptions were rightfully sustained.

In all sales made by an executor or an administrator, he acts under the decretal order of the probate court, and the purchaser, at his own peril, is required to ascertain the grounds and authority of the fiduciary, not from his declarations at the time of the sale, but from the orders of the court and the statutes of the state in regard to his special duties in the premises. The administrator could make no terms with the purchasers at such sales which the orders of the court or the laws of the land did not warrant. Of the nature of such orders and of the provisions of the law the purchaser had the same means of knowing and understanding as the administrator. If the law, therefore, did not warrant a sale for Confederate money, the declaration of administrator at the time of sale, that the sale was made for Confederate money, could not operate as a fraud upon the purchaser."

Each of the parties, the administrator and the purchaser, might have speculated upon the prospects of the success of the Confederate States, and might have imagined that its currency was valid, and would be maintained as legitimate. But their speculations did not change the law of the case, nor alter the nature nor obligations of the contract, whatever might have been the representations of the one or the impressions of the other in regard to it. Ordinarily mistakes of the law by parties will not be corrected by the courts in the interest of either. The judgment of the court is therefore

AFFIRMED.